[Civ. No. 13487.    Second Dist., Div. One.    July 14, 1942.]

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF HOLLYWOOD (a Corporation), Respondent, v. STATE BOARD OF CONTROL et al., Appellants.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and Robert Clifton for Appellants.

Richard FitzPatrick and J. Rex Dibble for Respondent.

DORAN, J.—Respondent, a corporation doing business in the State of California and subject to payment of franchise taxes pursuant to the provisions of the Bank and Corporation Franchise Tax Act (Stats. 1929, page 19, as amended; Deering's Gen. Laws, 1937, Act 8488), made returns for said taxes for the years 1934 to 1937 inclusive, and paid taxes in accordance with said returns. Later, on or about April 13, 1938, having discovered an alleged error in computation of the taxes, respondent filed its claim for refund of the amounts which it asserted had been overpaid by reason of such error. The Franchise Tax Commissioner disallowed the claim for refund and respondent appealed to the State Board of Equalization. The latter board determined that the Franchise Tax Commissioner was in error in disallowing the claim for refund and allowed a refund. The board notified the commissioner of its decision and the commissioner notified the State Board of Control. The State Board of Control, at a meeting held by it, of which respondent had no notice, disapproved the refund and advised respondent of its action. In the meantime any right respondent may have had under the Bank and Corporation Franchise Tax Act to bring suit against the state for the refund had expired. Respondent then filed its petition for writ of mandate in the Superior Court of Los Angeles County against the State Board of Control and the controller praying that the court order that board to approve the claim and the controller to pay it. The attorney general, on behalf of the board and the controller, filed a demurrer to the petition for writ of mandate and after hearing thereon the court overruled the demurrer without leave to answer and

ordered judgment for petitioner as prayed. From that judgment this appeal is taken.

The instant case involves the interpretation of section 27 of the Bank and Corporation Franchise Tax Act, *supra*, which, so far as here material, at the time this claim for refund was allowed by the State Board of Equalization and disallowed by the State Board of Control, read as follows:

"If, in the opinion of the commissioner, or the State Board of Equalization, as the case may be, there has been an overpayment of tax, penalty or interest by a taxpayer for any year for any reason, the amount of such overpayment shall be credited against any taxes then due from the taxpayer under this act, and the balance shall be refunded to the taxpayer or its successor through reorganization, merger, or consolidation, or to stockholders upon dissolution. *No such credit or refund shall be allowed or made until approved by the State Board of Control.* No such credit or refund shall be allowed or made after four years from the last day prescribed for filing the return or after one year from the date of overpayment, whichever period expires the later, unless before the expiration of such period a claim therefor is filed by the taxpayer. A refund claim upon which action has become final shall not thereafter be considered a refund claim within the meaning of the foregoing provision except to the extent allowed. Every claim for refund must be in writing under oath and must state the specific grounds upon which the claim is founded.

"If the commissioner disallows any claim for refund, he shall notify the taxpayer accordingly. At the expiration of ninety days from the mailing of such notice, the commissioner's action shall be final unless within such ninety-day period, the taxpayer appeals in writing from the action of the commissioner to the State Board of Equalization. If the commissioner fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and appeal to said board. Appeals must be addressed and mailed to the State Board of Equalization at Sacramento, and a copy of the appeal addressed and mailed at the same time to the commissioner at Sacramento. Said board shall hear and determine the same and thereafter shall forthwith notify the taxpayer and the commissioner of its determination. *Such determination shall*

*be final* upon the expiration of sixty days from the time of such determination unless within such sixty-day period the determination is modified, *in which event it shall become final* upon the expiration of sixty days from the time it is modified. ...

"Any refund or any portion thereof which is erroneously made, and any credit or any portion thereof which is erroneously allowed, may be recovered ... in an action brought by the commissioner in a court of competent jurisdiction in the county of Sacramento in the name of the people of the State of California, and such actions shall be tried in the county of Sacramento, unless the court, with the consent of the Attorney General or the counsel for the commissioner, orders a change of place of trial. The Attorney General or the counsel for the commissioner must prosecute such action, and the provisions of the Code of Civil Procedure, relating to service of summons, pleadings, proofs, trials, and appeals are applicable to the proceedings herein provided for." (Stats. 1939, ch. 1050, § 16.) (Italics added.)

The petition for writ of mandate herein set forth the facts regarding petitioner's claim for refund, the decision of the State Board of Equalization with regard thereto and the disapproval of the State Board of Control, and alleged that after petitioner had been advised by the latter board that it had disapproved the refund "petitioner reminded said State Board of Control that its claim for refund had been approved by the State Board of Equalization and demanded that said State Board of Control approve said refund"; that: "Notwithstanding said demand by petitioner, the State Board of Control has refused, and continues to refuse, to approve said refund." The petition did not state any facts from which it might be concluded that the action of the board, in the circumstances, amounted to an abuse of discretion. As appears from the contentions of respondent upon this appeal, as well as from the petition itself in the court below, the petition for the writ of mandate was predicated upon the theory that since the claim for refund had been allowed by the State Board of Equalization, it was mandatory upon the State Board of Control to approve it. It is true that in the petition it was alleged that petitioner was not given any notice of the meeting of the Board of Control at which said refund was disapproved, and that petitioner was not given any opportunity to be heard by said board prior to said disapproval; that petitioner has not since been given any oppor-

tunity to be heard regarding the validity of the action of the board in disapproving said refund. But it is not urged by respondent that such allegations were sufficient to show an abuse of discretion on the part of the Board of Control. Respondent apparently relies solely upon its contention that the Board of Control was without power of discretion under the statute. As appears more particularly hereinafter, the procedure adopted by the board does not necessarily bear a relation to the power of the board to act, or of itself reveal an abuse of discretion under the provisions of the statute in question.

From the written opinion given upon the ruling on appellants' demurrer, the court below appears to have taken the position that the approval required of the State Board of Control by the provisions of the statute above quoted was merely a ministerial act, not permitting the exercise of any judgment on the part of said board regarding the merits of the claim; that the action of the State Board of Control under the statute was limited to "auditing," in the sense of checking and correcting computations and similar ministerial acts. Appellants contend that section 27 of the act in question does not limit the power of the Board of Control to mere audit of claims; that in actions in mandate involving payment of public funds in refund of tax claims the merits of the claim must be judicially established as a condition precedent to issuance of the writ. Stated in its simplest terms, the question here to be answered is whether in passing upon claims for refund of taxes, under the provisions of section 27 of the act above quoted, the Board of Control exercises discretionary powers or acts only in a ministerial capacity.

Under the long settled rules governing actions in mandate, if the approval of the board, required by the foregoing provisions, called for the exercise of discretionary powers, then a petition for a writ of mandate, which merely recited that the Board of Control had refused to approve a refund after the same had been approved by the State Board of Equalization, would not state sufficient grounds for the issuance of a writ. Further allegations to show an abuse of discretion on the part of the board would be required.

As pointed out by appellant, the word "audit" is not used in section 27, *supra,* and it is therefore unnecessary to consider the particular meaning which should be ascribed to that word. As to the meaning of the word "approve,"

it was said in *Cosner* v. *Board of Supervisors of Colusa County,* 58 Cal. 274, at 277, "The word, 'approve' is to be considered in connection with the action to which it relates. It does not *ex vi termini* necessarily import the exercise of discretion. Presumptively, however, when the 'approval' of a distinct officer is made necessary to validate or consummate the act of another, it is the intention of the Legislature that he should be invested with the option to sanction officially or to disapprove the act submitted to him. It involves the idea of discretion and adjudication. Yet such presumed intention is not conclusive, and if it clearly appears from the nature of the act, or the express language of the context, that the word 'approved' is used in a more limited sense, and imposes a mere ministerial or clerical duty, the Courts will so hold."

The trial court, in passing upon the question here presented, held that if it be construed that the Board of Control has jurisdiction to determine for itself questions of law or of fact, or to do more than to audit a claim, then the provision of section 27 of the act, above quoted, that the determination of the Board of Equalization shall be final, is in conflict with that providing that no refund shall be allowed until approved by the Board of Control, because, if the decision of the Board of Equalization approving a refund is final the Board of Control is without power to refuse approval of the claim. In arriving at such a conclusion the trial court apparently overlooked the provisions of section 30 of the same act, which read, so far as here material: "Within ninety days after the mailing of the notice of the commissioner's action upon any refund claim, or in case of an appeal to the State Board of Equalization from the disallowance of any refund claim, within ninety days after the mailing of the notice of the board's determination of the appeal, the taxpayer may bring an action against the commissioner on the grounds set forth in such claim for the recovery of the whole or any part of the amount claimed as an overpayment." (Stats. 1939, ch. 1050, § 18.)

It appears from the portion of section 30 above quoted that the decision of the State Board of Equalization upon a claim for refund is not final as against the taxpayer, since the taxpayer may thereafter bring an action for recovery of the amount claimed as overpayment. Reading the provisions of section 27, *supra,* in the light of those just quoted from

section 30 of the same act, it becomes reasonably plain that when it is therein provided that the determination of the Board of Equalization shall be final upon the expiration of sixty days from the time of such determination, or upon the expiration of sixty days from the modification of such determination, such provision was merely enacted as a limitation of time upon the power of the Board of Equalization to act in the matter. In other words, sixty days after the determination of the board, or a modification of such determination, no further modification of the decision may be made and the board's determination shall then become final, *as far as the Board of Equalization is concerned.* This construction of the act becomes even plainer when it is considered that section 27 thereof clearly allows the Board of Equalization to modify its decisions upon tax refunds. Obviously, a limitation of time must be placed upon any such power of modification. It may be seen therefore that even if the Board of Control is held to have the power to determine for itself questions of law or of fact, the provision for "approval" of the claim by that board is not in conflict with that governing the time within which decisions of the State Board of Equalization become "final."

The trial court also stated that there is no provision in the statute for an appeal to the Board of Control; that if the Legislature had intended said board to have appellate jurisdiction over the decisions of the Board of Equalization appropriate procedure would have been specified; that no hearing was given and none is provided for by law; that if the Board of Control is authorized to pass on the merits of claims for refunds and to consider questions of law or of fact the claimant would be entitled to a hearing before said board in order to satisfy the requirement of due process. It must be pointed out that the method of procedure adopted by the Board of Control bears no relation to the rules of statutory construction here being applied to section 27, *supra,* and is not decisive of the question here presented. The failure of said board to give notice of a hearing should not be considered in determining the legal effect of the language used in the statute. Moreover, there is nothing in the statute which precludes or denies such a hearing if requested. Apparently there was no petition for a reconsideration of the action by the Board of Control, accompanied by a request to be heard on the matter. The only action by respondent

appears to have been the demand for approval of the refund, referred to in respondent's petition herein. Such a demand is not necessarily the equivalent of a petition for a reconsideration. A fact of significance, and one apparently overlooked by the trial court, is that provision for the power of the Board of Control here in question was added to section 27 by a later amendment. (Stats. 1939, ch. 1050, p. 2934, at p. 2965.)

The trial court also pointed out that the statute makes no provision for the bringing of an action after the ruling by the Board of Control, and petitioner is without any remedy whatsoever unless a writ of mandate is granted in this proceeding. This is not relevant to the issue here presented, which is, in the final analysis, whether the petition stated sufficient facts to warrant the issuance of a writ of mandate. Moreover, the trial court's conclusion, that the failure to make provision for such an action after a decision by the board was no doubt due to the fact that it was intended that the powers of said board should be limited to the ministerial act of auditing the claim, is an assumption unwarranted by the circumstances and constitutes a *non sequitur*.

The provisions of section 27 of the Bank and Corporation Franchise Tax Act, as above quoted, clearly indicate that the approval of the Board of Control is made necessary to validate the act of the State Board of Equalization in allowing a claim for tax refund. Presumptively, therefore, it was the legislative intent to invest the Board of Control with a power of discretion in the matter; nor does it clearly appear either from the nature of the act or the express language of the context that the word "approve" is used in a more limited sense. Therefore, in accordance with the rule enunciated in *Cosner* v. *Board of Supervisors of Colusa County, supra,* the presumption must stand that it was the intent of the Legislature to invest the Board of Control with the option to sanction or to disapprove the act submitted to it. ▮ The word "approve" has no technical meaning and the court is without power to extend its meaning beyond that which the "approved usage of the language" contemplates, unless a contrary or more limited construction "according to the context" obviously is intended. (Civ. Code, § 13.)

▮ It follows that unless respondent's petition set forth facts which tended to show an abuse of discretion on the part of the board, the petition failed to state sufficient facts to jus-

tify the issuance of a writ of mandate; and appellant's demurrer thereto was properly taken and should have been sustained. Predicated as it was, upon a theory that the Board of Control was without discretion in the matter, respondent's petition for a writ of mandate was insufficient.

The judgment is accordingly reversed, with directions to the trial court to sustain appellants' demurrer to respondent's petition, with leave to respondent to amend its petition if it is so advised.

York, P. J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 10, 1942. Carter, J., and Traynor, J., voted for a hearing.