[Civ. No. 22626. Second Dist., Div. Three. July 15, 1958.]

PARAMOUNT CITRUS ASSOCIATION, INC. (a Corporation), Appellant, v. W. C. JACOBSEN, as Director of Agriculture, etc., et al., Respondents.

G. V. Weikert for Appellant.

Edmund G. Brown, Attorney General, Alberta Gattone, and John E. Fourt, Deputy Attorneys General, for Respondents.

PATROSSO, J. pro tem.*—Plaintiff, a packer and shipper of citrus fruit, including lemons in fresh and processed form, instituted this action against the Director of Agriculture of the State of California and other defendants, seeking an injunction enjoining the defendants from enforcing the Marketing Order for Lemon Products which became effective September 28, 1955, and for a declaratory judgment declaring said marketing order to be void. Judgment was entered in favor of the defendants and plaintiff appeals.

Appellant attacks the validity of the marketing order upon the ground that, for several reasons hereinafter to be mentioned, the order was not adopted in compliance with the requirements of section 1300.16, subdivision (a) (1) of the Agricultural Code which defines the authority of the director to promulgate marketing orders and amendments thereto.

The marketing order in question is an amendment of the preexisting order which became effective November 3, 1954, and, among other things, extended such previous marketing order for a period of one year commencing October 1, 1955. The marketing order regulates the market for processed lemon products by withholding from the market a certain percentage

*Assigned by Chairman of Judicial Council.

of the lemons acquired by the processors for processing. It operates only upon processors,[1] of which appellant is one, and is operative at the point at which the processor receives the lemons for processing. At that point he is required to withhold a certain percentage of those lemons or the products processed therefrom, from the market for delivery to the stabilization pool.

Plaintiff and others in the same industry are engaged in processing the entire lemon by breaking it up into its component parts. The processed products fall into two categories —peel products and the juice products. The juice component comprises about 37 per cent of the whole lemon used for processing. None of the processors is engaged in canning whole fresh lemons or lemon segments. Appellant's juice operations for the year covered by the marketing order, were as follows: Frozen lemon concentrate 91 per cent of the total juice products produced; frozen concentrate for lemonade 2 per cent and frozen single strength lemon juice, 7 per cent.

The process followed in the production of juice products, as disclosed by the evidence and the trial court's findings, is substantially as follows: The lemons are washed and placed in a Brown extractor, in which the lemons are cut in half and the juice extracted. The juice is then run through a fine screen to remove the seed, pulp and fruit cells, and some of the oil in the juice is evaporated. For the production of lemon concentrate, the water is evaporated out of the lemon juice in the quantity required to produce the concentration desired. The concentrate is then placed in various types of containers —cans, 50-gallon drums and barrels—and frozen. It is not sterilized by heat and it is dependent upon freezing and its own acidity for preservation. The frozen lemonade concentrate consists of a mixture of lemon concentrate, fresh lemon juice and sugar. When water is added to it by the ultimate consumer, the result is lemonade. This is packed in six-ounce cans. It is not sterilized by heat and in the main is not heat treated, but is dependent upon freezing for its preservation.

---

[1] ''Processor' means any person engaged within this State, in the operation of receiving, grading, packing, canning, fermenting, distilling, extracting, preserving, grinding, crushing or changing the form of an agricultural commodity for the purpose of preparing such agricultural commodity for market or of marketing such commodity or any other activities performed for the purpose of preparing such commodity for market or of marketing such commodity, but shall not include a person engaged in manufacturing from an agricultural commodity, so changed in form, another and different product.'' (Agr. Code, § 1300.12, subd. (f).)

Frozen single strength lemon juice is produced in the same manner as lemon concentrate except that no water is removed by evaporation. It is packed in cans and frozen. Like the lemonade, it is not sterilized by heat and in the main is not heat treated, being dependent upon freezing for preservation.

■ The first reason assigned by appellant in support of its contention that the marketing order is not valid is that it was not assented to by 65 per cent of the *number* of the processors of lemon products within the State of California. It is, however, conceded that the marketing order was assented to by processors who processed more than 65 per cent of the total *volume* of the lemons processed within the state.

■ The argument in support of this contention is that the operation in which plaintiff is engaged—processing lemons by producing frozen lemon concentrate, lemonade and lemon juice in the manner hereinbefore described, constitutes "the operation of canning of fresh fruits" as these words are used in section 1300.16, subdivision (a) (1) of the Agricultural Code[2] which is the statute conferring authority upon the Director of Agriculture to promulgate marketing orders and amendments thereto. Unless the premise upon which this argument is predicated is true, the contention falls. Thus the question: Does the operation of producing and packaging of lemon juice products in the manner hereinbefore described,

---

[2] "No marketing order or major amendment thereto, directly affecting handlers, issued pursuant to this chapter, shall become effective unless and until the director finds that such marketing order or amendment thereto has been assented to in writing by the handlers engaged in the marketing activity or activities regulated by such marketing order who handle not less than sixty-five percent (65%) of the *volume* of the agricultural commodity regulated thereby which is processed or distributed within the area defined in such marketing order or amendment thereto, *or* that such marketing order or amendment thereto has been assented to in writing by not less than sixty-five percent (65%) of the *number* of handlers engaged in the marketing activity or activities regulated by such marketing order; *provided, however, that any marketing order or major amendment thereto directly affecting processors engaged in the operation of canning of fresh fruits or vegetables* or canning or packing of dried fruits shall not be made effective by the director unless and until the director finds that such marketing order or amendment thereto has been assented to in writing by such processors engaged in the marketing activity or activities regulated by such marketing order or amendment thereto who processed not less than sixty-five percent (65%) of the *volume* of such agricultural commodity which is processed within the area defined in such marketing order or amendment thereto *and* by sixty-five percent (65%) of the *number* of such processors engaged in the marketing activity or activities regulated by such marketing order or amendment thereto." (Emphasis added.)

constitute the "canning of fresh fruits" as those words are used in the statute?

Upon this score the trial court made the following findings of fact in addition to those hereinbefore referred to: "III That none of said lemon juice products produced by plaintiff rely upon sterilization by heat and hermetic sealing for their preservation. That all of said products rely upon freezing for their preservation. IV That the terms 'canning' and 'canning of fresh fruits' have a clear, fixed, well-established, common and well-understood meaning. That that meaning is particularly well understood in the agricultural industry and in the canning, preserving and processing industry and in the wholesale and retail trade where such commodities are marketed. V That the term 'canning,' in its common and well understood sense and particularly as it is understood in industry and trade, means a process of preservation by sterilization by heat and hermetic sealing; that if either process of sterilization by heat or of hermetic sealing is absent the process is not 'canning' even though cans may be used as containers; that where an additional process, such as freezing, is necessary to effect preservation, the operation is not that of 'canning' within the established and well-understood meaning, and within the trade and industry meaning of that term. VI That the term 'canning of fresh fruits,' within the common and well-understood meaning and within the trade and industry meaning of the term, means the preservation by sterilization by heat and hermetic sealing of fruit in whole or recognizable form. That lemon juice products produced by plaintiff after processing are not fruit in whole or recognizable form. . . . VIII That the operations engaged in by plaintiff in the manufacture of its lemon juice products constitute preservation by freezing of such products. IX That the operations engaged in by plaintiff in the production of its lemon juice products do not constitute the operation of canning of fresh fruits."

Finding III is not specifically attacked by the appellant. As to the remaining findings which we have quoted the complaint is that these consist "of conclusions which invade. the province of the court" and are unsupported by the evidence. Neither objection is well taken.

As to the first, in the complaint it is alleged, among other things, that at all the times therein mentioned, "in processing citrus fruit, including lemons, plaintiff was and now is engaged in the operation of canning of fresh fruit." This

allegation is specifically denied by defendants in their answer. Thus the factual issue was tendered as to whether appellant was in fact engaged in the operation of canning of fresh fruits. This was the ultimate fact which the court was called upon to determine. In any event, if it be conceded that these findings are misplaced conclusions of law, the court having, as previously noted, found expressly as to the nature of appellant's operations, no prejudice was suffered by the appellant unless it be determined that the probative facts so found do not warrant the conclusion drawn therefrom, namely: that appellant's operations did not constitute the ''operation of canning of fresh fruits.'' To this question we now address ourselves.

Upon the trial considerable testimony was adduced by both parties through witnesses engaged in the business of processing lemons for the production of juice products, as to whether such operation constituted the canning of fresh lemons. While this evidence was conflicting, that adduced upon behalf of the defendants was to the effect that within the industry the terms ''canning of fresh fruits'' means the preservation by heat and hermetic sealing of fruits in whole or recognizable form; that in the terminology employed in the industry, a fruit was not a juice and a juice was not a fruit. The court accepted the testimony of the defendants' witnesses and we are unable to say that it was not warranted in so doing.

It further appears, and the trial court so found, that continuously since the words ''canning of fresh fruits'' were incorporated in section 1300.16, subdivision (a) (1) of the Agricultural Code (Stats. 1939, ch. 665, p. 2132), the Director of Agriculture has placed upon the terms ''canning'' and ''canning of fresh fruits'' an administrative construction in accordance with the trial court's finding, and has so continuously construed said language as it applies to the marketing order for lemon products since the first marketing order covering such activity was adopted on March 10, 1951; and that since that time the director, as the administrative agent charged with the duty of administering the California Marketing Act, has continuously construed said language as being inapplicable to any of the processing operations engaged in by the members of the industry regulated by said marketing order.

 The rule is well settled that '' '[T]he contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to

154

great weight, and courts generally will not depart from such interpretation unless it is clearly erroneous or unauthorized.' " (*Richfield Oil Corp.* v. *Crawford* (1952), 39 Cal.2d 729, 736 [249 P.2d 600].)

 In the light of the testimony introduced upon the trial and heretofore adverted to, it may not be said that this administrative construction is clearly erroneous. Moreover, aside from the evidence as to the understanding of the language in question among those engaged in the particular activity, we find it difficult to believe that in common parlance the use of the phrase "canned fresh lemons" would be understood as referring to or being descriptive of a can of frozen lemon concentrate or lemon juice or that a reference to the contents thereof as "canned fresh lemons" would be understood as meaning that the can contained only the juice of lemons in some form. Thus we agree with the trial court's conclusion that appellant was not engaged in the operation of "canning of fresh fruits" and that the marketing order in question did not require the assent of 65 per cent of the *number* of the processors engaged in the processing of lemons in addition to the assent of the processors who processed 65 per cent or more of the total *volume* of lemons processed.

 Appellant next contends that the marketing order was not validly adopted because the notice given by the director of the public hearing called to consider amendments to the marketing order recites that the hearing was to be held "upon the request of the Lemon Products Advisory Board." The argument here is that the director is not required to hold a public hearing to consider the issuance of a marketing order or amendments thereto at the request of the advisory board, or otherwise stated, that the board is not authorized by the statutes to request the director to call and hold such a public hearing for the purposes stated. We see no merit in this claim.

Section 1300.13, subdivision (b) of the Agricultural Code, to which appellant points in support of its contention, prescribes the procedure which must be followed by the director in issuing a marketing order or an amendment to an existing marketing order, and reads as follows:

"Whenever the director has reason to believe that the issuance of a marketing order, or amendments to an existing marketing order, will tend to effectuate the declared policy of this act with respect to any agricultural commodity, he

shall, either upon his own motion or upon application of any producer or handler of such commodity, or any organization of such persons, give due notice of, and an opportunity for, a public hearing upon a proposed marketing order or such amendments to such existing marketing order.''

A reading of this section makes it crystal clear that the purpose thereof is to make it mandatory upon the director in any and all events, to hold a public hearing and give notice thereof before issuing a marketing order or any amendment to an existing marketing order. It expressly provides that he may call and hold such public hearing upon his own motion and must do so at the request of any ''producer or handler'' of the commodity to be regulated thereby. We need not pause to consider the validity of appellant's argument that the advisory board[3] is not a ''producer[4] or handler''[5] or ''any organization of such persons'' within the meaning of these words as used in the statute. If it be conceded that it is not, and that the director was not *required* to call and hold a public hearing at its request, this does not detract from his power to call and hold such a public meeting inasmuch as he is expressly authorized to do so upon his own motion. That he may have been motivated to exercise such power at the request of an agency which did not have the power to compel him to do so, is clearly of no consequence.

Appellant further contends that the marketing order was not legally adopted because of the fact that the public hearing called to consider the same, was not concluded prior to July 15, 1955. The facts in this connection which are undisputed are these: On June 3, 1955, the director in accordance with the statute, called a public hearing to be held on June 15th, 1955, at which there would be received and

---

[3]Any marketing order issued by the director must provide for the establishment of an advisory board to assist the director in the administration of the marketing order. The members thereof are appointed by, and hold office at the pleasure of the director. The members of such board must be producers and/or handlers of the particular commodity regulated by the order. Among the duties of the board is that of recommending to the director amendments to the marketing order. (Agr. Code, § 1300.15.)

[4]'' 'Producer' means any person engaged within this State in the business of producing, or causing to be produced for market, any agricultural commodity as herein defined.'' (*Id.* § 1300.12, subd. (d).)

[5]'' 'Handler' means any person engaged within this State as a distributor in the business of distributing an agricultural commodity in intrastate commerce, or any person engaged as a processor in the business of processing an agricultural commodity.'' (*Id.*, § 1300.12, subd. (e).)

considered suggested amendments to the then existing marketing order for lemon products and any requests with reference to the modification, suspension or termination of said marketing order. Notice of such hearing was given as required by law, and the hearing was held at the time and place specified, at the conclusion of which the hearing was recessed to a future date with the announcement that the director would give notice as to the time of the reconvening of the hearing. On July 7, 1955, the director gave notice in the manner prescribed by the statute of reconvening the hearing on July 19, 1955, at which time the hearing was reconvened and finally concluded.

As previously noted, the marketing order with which we are here concerned is an amendment of the preexisting marketing order which had become effective November 3, 1954. The latter order, as does the one herein involved, contained a provision reading as follows:

"Section A. EFFECTIVE TIME. This Marketing Order shall become effective on the date specified by the Director and shall continue in effect until September 30, 1955, or until sooner suspended or terminated by the Director, or by operation of law, in accordance with the provisions of the Act. The Director shall call a public hearing at least once a year during the term of this Order for the purpose of considering any proposed amendments and requests with reference to modification, suspension or termination of this Order. Such hearings shall be held not later than July 15 of each year."

It is by virtue of the foregoing provision of the marketing order that appellant seeks to support his contention that the order was not legally adopted because the hearing to consider the same was not concluded prior to July 15th. We do not agree.

The powers and duties of the Director of Agriculture to issue a marketing order or amendments to an existing order, are prescribed by Agricultural Code, section 1300.13, subdivision (b) of which is hereinabove quoted at length. Thereby the duty is laid upon the director *"whenever"* he "has reason to believe that the issuance of a marketing order, or amendments to an existing marketing order, will tend to effectuate the declared policy of this act" to give notice of and hold a public hearing upon such proposed marketing order or such amendments to such existing marketing order. The statute contains no limitation as to the time or times that such public hearing or hearings shall be held, provided that

the statutory notice thereof be given. The duty laid upon the director in this respect is a continuous one, and this being so, he may not shirk or limit the same by any provision in an existing marketing order. His power to call and hold such hearings and the procedure therefor being prescribed by statute, the propriety of the manner in which the same was exercised in a particular instance is to be tested by the terms of the statute—not by any order or regulation that may have been issued by the director in conflict therewith.

■ Finally appellant complains that the trial court failed to find upon certain allegations in plaintiff's complaint and three special defenses pleaded in defendants' answer. With respect to the allegations in plaintiff's complaint referred to, they were admitted by the answer and consequently no finding thereon was required. (*Sacre* v. *Chalupnik* (1922), 188 Cal. 386, 390 [205 P. 449]; *Weaver* v. *Fickett* (1927), 82 Cal.App. 116, 122 [255 P. 257].) As to the special defenses pleaded in the answer, no evidence was adduced in support thereof and likewise no finding thereon was required. (*McKelvey* v. *Wagy* (1910), 157 Cal. 406, 409 [108 P. 268].) Moreover, if the trial court had found in favor of the plaintiff and against the defendants upon each of the special defenses, this would in nowise have affected the ultimate result. Other objections to the findings have heretofore been adverted to and disposed of adversely to appellant's contentions.

The judgment is affirmed.

Shinn, P. J., and Wood (Parker) J., concurred.

A petition for a rehearing was denied August 14, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 10, 1958.