[Civ. No. 22119. Second Dist., Div. One. Apr. 16, 1957.]

ANNA MARIE SILER et al., Petitioners, v. INDUSTRIAL
ACCIDENT COMMISSION et al., Respondents.

William T. Hays for Petitioners.

Everett A. Corten, Edward A. Sarkisian and Loton Wells for Respondents.

WHITE, P. J.—Petitioners, the widow and minor children of Joseph Horace Siler, seek review and the annulment of an order of respondent commission denying dependency benefits. Respondent commission's finding number two, on which the order rested, is that the death of said Siler "was not caused nor hastened by any injury or injuries arising out of and occurring in the course of" said decedent's employment. Basically, the question presented is whether the finding is supported by substantial evidence.

The relevant facts can be epitomized as follows:

The decedent, hereinafter referred to as the employee, worked as a detective-sergeant in the office of the sheriff of Los Angeles County. Petitioners were wholly dependent upon said employee for support. That his work was in active law enforcement, with more than five years of such service prior to August 18, 1954, under civil service employment and a regular full time salary as a deputy sheriff of Los Angeles County is not questioned.

In July, 1954, the employee commenced to have chest pains which lasted three or four minutes and were relieved by rest. During August, 1954, the chest pains occurred more frequently, about once or twice each day. On July 31, 1954, he had to work extra long hours without rest; and a similar incident of overwork occurred on or about August 11, or 12, 1954. On August 18, 1954, said employee suffered a coronary occlusion. Thereafter and up to the time of his death on October 2, 1955, said employee was under treatment for his heart condition. During this period he did not return to his duties in the sheriff's department, and he did only light work around his chicken ranch.

On October 2, 1955, he suffered a second heart attack at his home during the night, and he died therefrom on the same date.

On February 2, 1956, petitioners filed their application for adjustment of compensation for dependency benefits, claiming the death was industrially caused. On March 20, 1956, hearing was duly held on said application, following which respondent commission's referee made findings and order reading, in part, as follows: "Joseph H. Siler, born March 6,

1911, while employed as a detective sergeant on August 18, 1954, at San Dimas, California, by the County of Los Angeles . . . sustained injury consisting of a coronary occlusion which went on to healing, arising out of and occurring in the course of his employment . . .''; that ''The employee died on October 2, 1955, and his death was not caused nor hastened by any injury arising out of and occurring in the course of his employment on August 18, 1954'' . . . and that ''. . . It is ordered that applicants (petitioners) take nothing by reason of (their) claim.''

Thereafter, petitioners duly filed their petition for reconsideration. Respondent commission's referee recommended that rehearing be granted so that the ''matter can be thoroughly explored''; but the commission refused to follow the recommendation of the referee, and made and entered its order that the petition for reconsideration be denied.

To us it appears unnecessary to review in any detail the medical testimony which was before the referee. We are satisfied that if petitioners' claim of error committed by the referee and commission, to be hereinafter discussed, is not well-founded, there was medical testimony sufficient to establish that the second heart attack and Mr. Siler's death on October 2, 1955, were due to nonoccupational causes and to sustain the finding that the employee's death on October 2, 1955, was not caused nor hastened by any injury arising out of and occurring in the course of his employment on August 18, 1954. It should be mentioned however that the finding was predicated entirely on the reports of one physician (Dr. Dimitroff) ; and that petitioners at the hearing before the referee offered no medical testimony other than a report by another physician (Dr. Schield), who had examined and treated the decedent, which said latter report amounted only to a report of the physician's examination and treatment of the employee and did not contain his opinion as to the cause of the heart trouble or as to whether or not it was occupationally caused.

Upon their petition for reconsideration, petitioners however annexed to their said petition a report of Dr. Martin S. Goldfarb dated August 16, 1956. In his report, Dr. Goldfarb stated in part that, ''the first coronary occlusion hastened and was contributory to the second occlusion''; that the ''decrease in the myocardial reserve, due to the first infarction, placed an increased load on the remainder of the myocardium''; and said doctor gave it as his opinion that, ''It is

reasonable to assume that the duties of a Deputy Sheriff, which are of an exciting and stimulating nature, did aggravate and contribute to the underlying condition of essential hypertension which in turn did accelerate the arteriosclerotic disease process.''

Notice should also preliminarily be taken of petitioners' positive assertion that both the referee and commission ruled that the rebuttable presumption contained in section 3212.5 of the Labor Code, to wit, that heart trouble which develops or manifests itself during the period while an employee is a member of a police department of a city or municipality shall be presumed to have arisen out of and in the course of employment, had no application to deputy sheriffs, and that the referee and commission refused to consider or weigh said presumption. Respondent commission does not challenge the correctness of petitioners' assertions, and therefore, we shall assume as a fact that the referee and commission ruled that said rebuttable presumption was not applicable herein and did not therefore weigh the presumption as a species of evidence.

 In this proceeding, two questions are primarily involved:

(1) Did the rebuttable presumption contained in section 3212.5 of the Labor Code (as it read on August 18, 1954) apply to deputy sheriffs of a county?

(2) Whether substantial error was committed by the commission in refusing to weigh said presumption (if it was applicable herein) against the other evidence?

Insofar as pertinent herein, section 3212.5, as it read on August 18, 1954, provided as follows:

''In the case of a member of a police department of a city *or municipality,* or a member of the State Highway Patrol, when any such member is employed under civil service upon a regular, full time salary, the term 'injury' as used in this division includes heart trouble and pneumonia which develops or manifests itself during a period while such member is in the service of the department, or the State Highway Patrol, as the case may be . . .

''Such heart trouble or pneumonia so developing or manifesting itself shall be presumed to arise out of and in the course of the employment; provided, however, that the member of the police department or State Highway Patrol shall have served five years or more in such capacity before the presumption shall arise as to the compensability of heart trouble

so developing or manifesting itself. This presumption is disputable and may be controverted by other evidence, but unless so controverted, the commission is bound to find in accordance with it." (Emphasis added.)

Had the Legislature in the aforesaid statute merely used the phrase, "a member of a police department of a city," it seems obvious enough that the foregoing presumption would not be applicable to deputy sheriffs of a county. However, the lawmaking body after the word "city" also used the words "or municipality," thereby raising a perplexing problem as to the meaning of the statute and the legislative intent in the use of the words, "or municipality," and the phrase, "a member of a police department of . . . a municipality."

 The fundamental rule of statutory construction which must be borne in mind is well expressed in *Prager* v. *Isreal,* 15 Cal.2d 89, 93 [98 P.2d 729], as follows: ". . . Any construction should be avoided which implies that the Legislature was ignorant of the meaning of the language so employed, or that it used words in vain, the legal intendment being that each and every clause was inserted for some useful and sensible purpose." It must, therefore, be presumed that in using the words "or municipality" after the word "city," the Legislature intended the words to have some meaning and to perform some useful office.

Respondent commission in its answer, fails to ascribe any meaning to the words, "or municipality," and, in effect suggests that they be ignored by the court in construction of the statute because, as appears in the answer of respondent commission, "Scattered through our laws are many provisions showing clearly that 'municipality,' far from being synonymous with 'county' or inclusive of it, denotes, so far as our governmental structures are concerned, a type of organization distinctly different. . . . Would petitioners have it that any member of any 'municipality'—within that frame of reference—which had any kind of policing duty, would be included in the coverage of *Section 3212.5?* Is it not more reasonable to assume that the Legislature, which is an articulate body, was capable of including earlier than it did, a specific reference to *county* peace officers, if, indeed, it desired to include them in the group favored by the presumption, prior to the time of such actual inclusion?" . . . "Effective September 7, 1955, *Section 3212.5* was amended by adding a clause expressly including 'a sheriff or deputy sheriff em-

ployed upon a regular, full-time salary'.'' It is also stated by respondent commission in its answer that, ''Research, for the purpose of making this answer, has failed to disclose any authoritative controlling definition of the term 'municipality.' ''

Petitioners earnestly urge that in the context the terms ''municipality'' and ''a member of a police department of a . . . municipality'' includes and means county, and a member of a police department of a county, i.e., sheriffs and deputy sheriffs; that the Legislature must be presumed to have been aware that there are no police departments other than the police departments of incorporated cities and the sheriff's departments in unincorporated areas; and that, unless the terms ''municipality'' and ''a member of the police department of a . . . municipality'' are construed in the context to mean and include counties and members of the sheriff's departments of counties, the said terms have no meaningful purpose.

From the independent research by us, as well as study of the cases cited by petitioners, we are impressed that the authorities lend considerable support to the latter's basic contention that in the context the terms ''municipality'' and ''a member of the police department of a . . . municipality'' may very well mean and include sheriffs and deputy sheriffs of a county. That the term ''municipal'' as commonly used, is appropriately applied to all corporations exercising governmental functions, either general or special was the holding in *Merchants Nat. Bank* v. *Escondido Irr. Dist.*, 144 Cal. 329, 333 [77 P. 937].

*Gadd* v. *McGuire*, 69 Cal.App. 347 [231 P. 754], involved the construction and interpretation of the ''City Boundary Line Act'' and of the ''Street Improvement Bond Act of 1893,'' which latter act in its title limited its operation to the issuance of bonds to represent the cost of street work ''within municipalities.''

While this case is a complicated one and deals with the provisions of statutes far afield from Labor Code, section 3212.5, the basic principles of statutory construction enunciated therein would seem to be applicable to the instant situation. At page 368, the court declares:

''We are by no means convinced that the title of the Street Improvement Bond Act of 1893 limits its operation to cities and towns. The word 'municipality' is often used as synonym of the term 'municipal corporation.' (28 Cyc., p. 118.) *Whenever it appears that the legislature so intended, the terms*

*'municipality' and 'municipal corporation' will be construed to* include county or other quasi-municipal corporation. (Citing cases.)'' (Emphasis added.)

More closely analogous to the situation with which we are here confronted is the case of *Murphy* v. *Freeholders of Hudson,* 91 N.J.L. 40 [102 A. 896], wherein a county prosecutor who had been elected to office failed or neglected to take and file an official oath. By reason thereof, the office was declared vacant and a successor appointed in his place. A New Jersey statute in the words of the New Jersey Supreme Court required ''persons elected or appointed to any office in any town, township, borough, *or other municipality* to take an oath before entering on the duties of his office and to file it with the clerk of the *municipality* in which he shall have been elected or appointed.''

The county prosecutor contended that the said statute had no applicability to county offices. The court stated that the specific question before it was whether the words ''other municipality'' were meant to include counties. In holding that the statute applied to said county prosecutor and county officers, the Supreme Court of New Jersey pointed out first ''that the word 'municipality' sometimes includes counties,'' and secondly that, since the difficulty which the Legislature was trying to cure was the failure and neglect of public officials to take and file oaths of office, it was reasonable to conclude that the Legislature meant to pass an act that would afford relief wherever the difficulty arose.

In *State* ex rel. *Schneider* v. *Midland Investment & Finance Corp.*, 219 Wis. 161 [262 N.W. 711], constitutional and statutory provisions with respect to municipal courts provided in substance that the processes of such a municipal court should not extend beyond the municipality in which it was located. The court in this case had to consider and construe the meaning of the terms ''municipal'' and ''municipality''; and it was held in substance that, while it is not to be denied that the authorities are confusing and conflicting as to the meaning to be given to the terms ''municipal'' and ''municipality,'' such terms are sufficiently broad under various circumstances to include counties.

 To us it seems manifest that by enacting Labor Code, section 3212.5, as it read on August 18, 1954, the Legislature intended to give the benefit of the presumption therein contained to peace officers as a class and that the legislative intent was to pass an act that would afford the relief provided

by the presumption whenever occasion arose for its application in the class of public employees sought to be benefited thereby and of which class the employee herein was a member.

 It was therefore, substantial error for the commission to refuse to weigh the foregoing presumption against the other evidence.

As heretofore noted, effective September 7, 1955, Labor Code, section 3212.5, was amended by adding a clause expressly including "a sheriff or deputy sheriff employed upon a regular, full-time salary" among the persons in whose favor the rebuttable presumption contained in said section applies. It is argued by both petitioners and respondent commission that this amendment strengthens their respective contentions as to the meaning of the pertinent section prior to the amendment thereof. If we are to enter the field of speculation, it seems to us just as reasonable to suppose that the Legislature made the amendment merely for purposes of clarification, as to suppose that the lawmaking body adopted the amendment because it believed that sheriffs and deputy sheriffs were not covered by the section as it read prior to the 1955 amendment.

Finally, respondent commission argues that, even if the presumption was applicable, there was ample and substantial medical evidence to support the commission's findings. Had the referee and commission recognized the presumption instead of refusing to consider or weigh it the argument of counsel for respondent commission might appear substantial, but it is not for us to speculate what conclusion might have been reached by the duly constituted arbiter of the facts had they given consideration to the presumption to which we have held petitioners were entitled. Indeed, it is significant, as heretofore pointed out, that the commission's referee herein recommended that the petition for reconsideration be granted so that the "matter can be thoroughly explored." If the presumption was, as we have held, applicable, petitioners were clearly entitled to have it considered and weighed by the triers of fact against other evidence.

The order is annulled and the proceeding remanded to respondent commission for further proceedings in accordance with the views herein expressed.

Doran, J., and Fourt, J., concurred.