[Civ. No. 20485.   First Dist., Div. One.   July 16, 1963.]

CHARLES COHON et al., Plaintiffs and Appellants, v. THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Respondent.

M. Mitchell Bourquin for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Respondent.

MOLINARI, J.—This is an appeal from a judgment denying appellants (hereinafter called the licensees) a peremptory writ of mandate in a proceeding for judicial review of an administrative decision of the Department of Alcoholic Beverage Control (hereinafter called the Department) ordering the suspension of an off-sale retail liquor license issued by the Department.

On March 13, 1959, the Department filed an accusation against the licensees in five counts charging that on five different occasions the licensees sold from their licensed premises cases of distilled spirits under the labels of Ancient Age whiskey and Cyrus Noble whiskey at sales prices below the applicable fair trade price. The acts set forth in all five counts were charged as providing grounds for suspension or revocation of the licensees' license under article XX, section 22, of the California Constitution,[1] sections 24200, subdivi-

[1]Cal. Const., art. XX, § 22, in relevant part, grants to the Department the power to deny, suspend or revoke alcoholic beverage licenses for good cause where the granting or continuance of such license would be contrary to public welfare or morals.

sions (a)[2] and (b)[3] and 24755[4] of the Business and Professions Code,[5] and rule 99(f) of the Department's rules. (Cal.Admin. Code, tit. 4, § 99, subd. (f).[6]

A notice of defense was filed with the Department in which the licensees admitted that the beverages listed in the five counts were sold by them at the prices alleged. They denied, however, that the "fair trade prices" alleged in the accusation were stipulated to or fixed in any fair trade contract which was filed and posted as required by law and the Administrative Code.[7]

[2]§ 24200, subd. (a), in relevant part, provides that when the continuance of a license would be contrary to public welfare or morals it is a ground constituting the basis for suspension or revocation of licenses.

[3]§ 24200, subd. (b), in relevant part, provides that violation of the rules adopted by the Department or other penal provisions of this state prohibiting or regulating the sale of alcoholic beverages or intoxicating liquors are grounds constituting a basis for the suspension or revocation of licenses.

[4]§ 24755, as it read during the period of time covered by the accusation herein, required all retail sales of distilled spirits to be made pursuant to fair trade contracts executed pursuant to chapter 10 (§§ 24750-24757) and prohibited any violations of such contracts. (§ 24750 as it read during the same period of time, and as it now reads, authorized fair trade contracts fixing the resale price of alcoholic beverages bearing the trademark, brand or name of the producer or owner and in fair and open competition with others of the same general class.)

[5]Unless otherwise indicated all code references hereafter are to the Business and Professions Code.

[6]§ 99, subd. (f), and subds. (a) and (b) of said section, which are also applicable to the instant case, as said rule and subdivisions read at the time covered by the accusation herein, provided in substance that no manufacturer, manufacturer's agent, wholesaler or rectifier was permitted to sell distilled spirits in containers bearing brands or names of owners except pursuant to fair trade contracts; that copies of such fair trade contracts should be filed with the Department, together with copies of minimum resale price schedules; and that no licensee should sell beverages at retail at a price less than the minimum resale price fixed by such fair trade contract.

[7]Said notice of defense objected to the accusation and requested its dismissal on the following grounds:

(1) That Bus. & Prof. Code, § 24755 and rule 99 of the Cal. Admin. Code are unconstitutional.

(2) That the alcoholic beverages subject of the accusation are not in free and open competition with alcoholic beverages of the same general class produced by others within the meaning of the laws exempting price fixing from the public policy of the state.

(3) That the contracts under which the " 'fair trade prices' " are alleged to have been stipulated or fixed are within the provisions of the Sherman Anti-Trust Act and the Cartwright Act of the State of California.

(4) That rule 99 of the Cal. Admin. Code is violative of the terms of § 25750 ( obviously intended as §24750) of the Bus. & Prof. Code and §11374 of the Gov. Code and is also inconsistent with the provisions of § 24200, subd. (b) of the Bus. & Prof. Code.

(5) That the fair trade prices are not supported by a valid contract.

On November 2, 1959, a hearing was held before the Department. At the commencement of the hearing the hearing officer denied the motion to dismiss and overruled the objections set forth in the notice of defense. Counsel for the licensees stipulated that the prices alleged in the accusation as the "Fair Trade Prices" were published in the "Industry Price Book" for the period covered by the accusation, and also stipulated that the prices charged by the licensees for the whiskies in question were as set forth in the accusation. The evidence adduced by the Department consisted of three exhibits. Exhibits No. 1 and No. 2 were fair trade contracts which fixed the minimum retail prices for the two brands of whiskey involved in the five counts of the accusation.[8] Each of the contracts had attached thereto a schedule of prices which listed the case price of the respective whiskies.[9] These contracts were duly certified by the custodian of fair trade contracts for the Department. The authentication of these contracts was not challenged by the licensees, but they were objected to by the licensees on the basis of irrelevancy and immateriality and upon the grounds that these documents do not purport on their face to be valid contracts and that these contracts were not subjects of the accusation, and upon all of the grounds enumerated in the notice of defense.[10] Exhibit No. 3 consisted of an affidavit by the editor of the Bev-

[8]Exhibit No. 1 was a contract entered into between Affiliated Distillers Brands Corp., a distributor of alcoholic beverages bearing the label or brand of Ancient Age whiskey, among others, and Excelsior W. & L., a retailer.

Exhibit No. 2 was a contract entered into between Haas Bros., the owner of the Cyrus Noble label, and P. & S. Liquor Store, a retailer.

[9]These prices were higher than those admittedly charged by the licensees for the two brands to the persons and at the times charged by the accusation.

[10]The record discloses that these exhibits were only received for identification and that the specific objections thereto were never formally ruled upon. No error is assigned by the licensees in respect to such omission. The specific objections interposed upon the presentation of these exhibits were substantially the same as those specified in the notice of defense which the hearing officer overruled. It is also apparent from the hearing officer's proposed decision that the finding against the licensees on the issue to which these exhibits were directed was in effect a ruling overruling the objection. (See *Van Haaren* v. *Whitmore*, 2 Cal.App.2d 632, 634 [38 P.2d 829]; *Citizens' Bank of Los Angeles* v. *Jones*, 121 Cal. 30, 33 [53 P. 354].) Moreover, both parties throughout the proceedings below and on this appeal have considered and treated these exhibits as having been admitted into evidence. It is well established that where the record shows that a document has been considered by the court and the parties as being in evidence, a reviewing court

erage Industry News to the effect that the prices alleged by the Department to be controlling on the licensees during the period covered by the accusation were published in said publication.[11] This affidavit was not objected to by the licensees. The Department's case was submitted upon these three exhibits. The licensees, conceding that there were no factual questions involved, did not present any evidence but submitted the matter upon the basis of the objections theretofore made and as stated in the notice of defense.

Thereafter, and on January 5, 1960, the hearing officer rendered his proposed decision wherein he made the following findings of fact: (1) that each of the sales which formed the basis of each of the five counts took place as therein alleged and that in each instance the sale was made at less than the stipulated minimum resale price provided for in the fair trade contracts duly filed with the Department; and (2) that the alcoholic beverages subject to the accusation were, and are, in free and open competition with alcoholic beverages of the same general class produced by others. The hearing officer also determined the legal issues presented and adjudged: that the various statutes and rules applicable to the accusation are constitutional and valid; that the fair trade agreements in question do not violate the Sherman Anti-Trust Act nor the Cartwright Act; and finally, that the fair trade prices were supported by valid contract and were subject to agreements or contracts sanctioned by law. The hearing officer thereupon recommended that the licensees' license be suspended for 15 days on each count, said suspension to run concurrently.

The Department adopted the hearing officer's decision and

will not look for technical reasons to exclude from consideration any part of the record which was before the court below. (*Mann* v. *Mann,* 76 Cal.App.2d 32, 41-42 [172 P.2d 369]; *Estate of Pailhe,* 114 Cal. App.2d 658, 664 [251 P.2d 76]; *Reed* v. *Reed,* 128 Cal.App.2d 786, 790-791 [276 P.2d 36]; see also *Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803]; *People* v. *Nahabedian,* 171 Cal.App.2d 302, 306 [340 P.2d 1053]; and *People* v. *Lucas,* 155 Cal.App.2d 1, 5 [317 P.2d 104], to the effect that where parties proceed throughout the trial upon a theory that a certain issue is presented for adjudication both parties are thereafter estopped from thereafter claiming that no such issue was in controversy.) Furthermore, it should be noted that at the conclusion of the hearing counsel for licensees conceded that there were no factual disparities involved and that the parties were ''generally agreed on the factual basis. . . .''

[11]As indicated by this affidavit The Beverage Industry News-Section No. 2 is an industry price list or book printed and published monthly in the State of California.

an appeal was thereupon taken by the licensees to the Alcoholic Beverage Control Appeals Board. This appeal posed the same legal questions presented by the licensees before the Department and was based on the grounds upon which the original accusation was defended. In addition, it was alleged that the Department had proceeded in excess of its jurisdiction for each of the reasons and upon the grounds alleged as a basis for the appeal. The Appeals Board rendered its decision affirming the Department. The licensees then filed a petition for writ of mandate in the superior court seeking a judicial review of the administrative adjudication. The writ was sought on the basis that substantial evidence did not exist which would support a finding that the alcoholic beverages which were the subject of the accusation were in fair and open competition. The same legal grounds theretofore urged by the licensees were again substantially reiterated before the court below. Upon hearing and determination the superior court discharged the alternative writ theretofore issued and denied a peremptory writ of mandate.

Upon this appeal the licensees make the following contentions:

(1) That the purported fair trade contracts relied upon do not comply with the provisions of section 24750 and do not constitute valid contracts, and in support of this assertion it is further urged: (a) that the contracts are not between the parties authorized to contract by the act; (b) the agreements relied upon are void for lack of mutuality; and (c) the only valid price fixing agreements are those relating to products which are in fair and open competition.

(2) Open competition does not and cannot exist under the law as presently administered by the Department; and

(3) The evidence is insufficient to support a finding of fair and open competition, and in support of this claim it is further asserted: (a) that the absent evidence of fair and open competition cannot be supplied by official or judicial notice; and (b) the recitals of the fair trade contracts bind no one but the parties signatory thereto.

The scope of our review in the instant case is governed by certain well-established rules. The Department, being an agency upon which the Constitution has conferred limited judicial powers (Cal. Const., art. XX, § 22), we are called upon, where there are conflicts in the evidence, conflicting interpretations thereof and conflicting inferences

which may be drawn therefrom, to determine whether the findings of the Department are supported by substantial evidence. In this respect our function is the same as that of the court below. (*DeMartini* v. *Department of Alcoholic Beverage Control,* 215 Cal.App.2d 787, 798-799 [30 Cal. Rptr. 668]; *Harris* v. *Alcoholic Beverage etc. Appeals Board,* 212 Cal.App.2d 106, 113, [28 Cal.Rptr. 74].) ■ On the other hand, where there is no factual issue or substantial conflict in the evidence, the question presented is one of law and the conclusions of law of the Department are not necessarily binding upon the appellate court whose duty it is to make the final determination in accordance with applicable principles of law. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Dunning* v. *Dunning,* 114 Cal.App.2d 110, 114-115 [249 P.2d 609]; *Mangini* v. *Wolfschmidt, Ltd.,* 192 Cal.App.2d 64, 73 [13 Cal.Rptr. 503].) ■ Accordingly, the applicability of certain statutes to a given situation presented on stipulated or uncontradicted facts is a question of law, the determination of which devolves upon us in accordance with applicable principles of law. (*Estate of Madison,* 26 Cal.2d 453, 456 [159 P.2d 630]; *Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321, 325 [109 P.2d 935]; *Peterson Tractor Co.* v. *State Board of Equalization,* 199 Cal.App.2d 662, 668 [18 Cal.Rptr. 800]; *Pacific Pipeline Constr. Co.* v. *State Board of Equalization,* 49 Cal.2d 729, 736 [321 P.2d 729]; *Bank of America* v. *State Board of Equalization,* 209 Cal.App.2d 780, 793 [26 Cal.Rptr. 348].) ■ Similarly, the construction of a written instrument, where no extrinsic evidence has been considered in aid of its interpretation, is one of law and we are not bound by the Department's interpretation of it. (*Estate of Platt, supra*; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; *Ziganto* v. *Taylor,* 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229]; *Estate of Black,* 211 Cal.App.2d 75, 83 [27 Cal.Rptr. 418].) ■ The interpretation placed upon a written instrument by the tribunal below, where extrinsic evidence has not been resorted to, while not binding on appeal, will be accepted by the appellate court if such interpretation is reasonable, or if such interpretation is one of two or more reasonable constructions of the instrument. (*Prickett* v. *Royal Ins. Co., Ltd.,* 56 Cal.2d 234, 237 [14 Cal. Rptr. 675, 363 P.2d 907]; *Lundin* v. *Hallmark Productions, Inc.,* 161 Cal.App.2d 698, 701 [327 P.2d 166]; *Estate of*

*Black, supra.*)  ██  It is likewise true that the administrative interpretation of a statute made by an administrative agency charged with carrying out a particular statute will be accorded great respect by the courts and will be followed if not clearly erroneous. (*Bodinson Mfg. Co.* v. *California Employment Com., supra,* p. 325; *People* v. *Southern Pac. Co.,* 209 Cal. 578, 594-595 [290 P. 25].)

The facts in the present case and the questions involved herein are identical with those in *DeMartini* v. *Department of Alcoholic Beverage Control, supra,* 215 Cal.App.2d 787, decided by this court on May 7, 1963.[12]  The counsel for the licensees who appeared in all the proceedings below in the present case, and who appears on this appeal, is the same counsel who appeared and represented the licensees in all of the proceedings in *DeMartini.*  The Department is represented in both cases by the Attorney General of the State of California.  In *DeMartini,* as in the case at bench, the licensees stipulated that they sold the particular beverages listed in the respective counts on the dates, to the persons and at the prices alleged therein.  As in the present case, there was also received in evidence upon the offer of the Department and over the objections of the licensees, certified copies of certain fair trade contracts and fair trade contract price schedules filed with the Department and covering in the aggregate all of the brands of distilled spirits subject to the said sales.  Again, as in the instant case, testimony was there introduced by the Department that during the period of time covered by the accusation, the fair trade prices filed with the Department were published in an industry publica-

---

[12]Except for licensees involved, the brands of the alcoholic beverages entailed in the accusation, the dates of sale, the prices charged, and the persons to whom sold, the essential facts are almost identical.  In *DeMartini* the accusation contained nine counts.  The first seven counts involved alleged fair trade violation and the last two counts charged the sale and delivery of the beverages designated in the said first seven counts without accompanying delivery orders and the keeping on file copies thereof.  The subject matter of the last two counts is not involved in the instant case.  The only other significant point of distinction does not go to the facts but to disposition of the matter by the trial court.  In *DeMartini* the trial court ordered the issuance of a peremptory writ commanding the Department to vacate and set aside its decision that the license of the licensees be suspended, and the appeal from such judgment was by the Department.  (There was also a cross-appeal by the licensees from that part of the judgment which commanded the Department to take such further steps in the proceedings against them as were not inconsistent with the trial court's findings of fact and conclusions of law.)

tion and regularly distributed to all licensees at all levels of distribution in the Northern California trading area, including San Francisco where (as here) the licensees conducted their business. As in the present case, the licensees in *De-Martini* stipulated that the fair trade prices set forth in the various fair trade contracts and schedules received in evidence appeared in specified issues of the above publication. The summary of the administrative record in *DeMartini* and in this case shows that while the licensees admitted that they made the sales in question at the prices alleged and thus in effect at prices less than those set forth in the contracts and schedules, they denied that any "fair trade prices" had been effectively fixed or established by the contracts.

In *DeMartini* this appellate court was called to determine the validity of the fair trade agreements and whether there was substantial evidence of fair and open competition. The contentions urged here as to the validity of the fair trade contracts and the sufficiency of the evidence were also made and asserted in *DeMartini*. Taking cognizance of *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141 [346 P.2d 737], which upheld the fair trade provisions of the Alcoholic Beverage Control Act as a valid and constitutional exercise of the police power, this court held in *DeMartini* that the fair trade agreements received in evidence conformed to the requirements of section 24750 and that they were supported by a consideration, valid and enforceable. As to the sufficiency of the evidence on the issue of fair and open competition, *DeMartini* held that the evidence supplied by three presumptions[13] was sufficient to establish that there was substantial evidence in the record that the alcoholic beverages covered by the contracts were in fair and open competition, particularly in view of the failure of the licensees to offer any evidence at all on this issue. (As is the case here.) The rationale of *DeMartini* is that it is to be presumed "that such 'official duty has been regularly performed' " (Code Civ. Proc., § 1963, subd. 15) when the Department, "employing its administrative expertise and satisfying itself that the fair trade contracts filed with it were in fact what they purported to be, determined, in accepting them for filing, that they were in fact entered into pursuant to section 24750 and that the products to which they related

---

[13]Code Civ. Proc., § 1963, subds. 15, 19, and 33.

were in fair and open competition with other distilled spirits of the same general class.'' (P. 808.) The other two presumptions found to be applicable were: (1) that ''[i]t is to be presumed that the transactions embodied in the fair trade agreements 'have been fair and regular' (Code Civ. Proc., § 1963, subd. 19) and that comporting with such presumption the agreements were not designed to impose unlawful restraints on open competition in the market''; and (2) that it is also to be presumed that '' 'the law has been obeyed' '' (Code Civ. Proc., § 1963, subd. 33) because ''If the products covered by the agreements in question had *not* been in fair and open competition, the agreements would have offended against the Cartwright Antitrust Law (§§ 16700-16758) and in particular section 16720 thereof.'' (Pp. 808-809.)

*DeMartini* also disposed of the contention that rule 99 itself nullifies fair and open competition (in that it effectively forecloses competition for at least 45 days and that by permitting the filing of amendments to meet competitive prices, it preserved the status quo of the market) with this statement: ''Any authorized person can file the contracts and the prices. Meeting competitive prices by filing amendments would seem to us to have the effect of enhancing rather than curtailing competition. If the licensees herein are complaining about the rule in operation, they have produced no evidence supporting the complaints. Moreover, as the court stated in the *Scovill* case, *supra,* the expression ' ''[f]air and open'' relates only to the manner of competing, not to the results.' ''[14] (P. 812.)

The principles, considerations and conclusions which are dealt with in detail in *DeMartini* are in all essentials applicable to the present case. The conclusions reached by the Department are in accord with *DeMartini* and with *Allied Properties* v. *Department of Alcoholic Beverage Control,* *supra,* 53 Cal.2d 141. Upon the authority of *DeMartini,* and for the reasons therein set forth, the judgment in the instant case must be affirmed. In reaching this conclusion we are in accord with the conclusions of law reached by the Department as to the interpretation placed upon the agreements received in evidence and the determination as to their validity. We are also in accord with the conclusions reached as to the

[14]*Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores,* 45 Cal.2d 881, 889 [291 P.2d 936].

validity and constitutionality of the statutes and the rule which are the subject of this litigation, and of their application to the situation presented by the facts of this case. As to the question of the sufficiency of the evidence it would appear that because there is no conflict in the evidence it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence in view of the principles announced in *DeMartini*. However, even if we assume that the state of the record is such that different conclusions could rationally be drawn from the evidence by the trier of fact there is substantial evidence in the record, under the authority of *DeMartini*, to support the findings of the Department.

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.