[Civ. No. 22905. First Dist., Div. One. Nov. 21, 1967.]

JAMES O. REIMEL, as Director, etc., Plaintiff and Appellant, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Defendant and Respondent; CHARLES COHON et al., Real Parties in Interest and Respondents.

[And 5 other cases.]*

*James O. Reimel v. Alcoholic Beverage Control Appeals Board (Jack Dorian et al.), Civ. No. 22906; James O. Reimel v. Alcoholic Beverage Control Appeals Board (Catherine Carella et al.), Civ. No. 22994; James O. Reimel v. Alcoholic Beverage Control Appeals Board (Michael Carella et al.), Civ. No. 22995; James O. Reimel v. Alcoholic Beverage Control Appeals Board (Charles Cohon et al.), Civ. No. 23282; James O. Reimel v. Alcoholic Beverage Control Appeals Board (Fred Lancelotti et al.), Civ. No. 23401.

162

Thomas C. Lynch, Attorney General, and L. Stephen Porter, Deputy Attorney General, for Plaintiff and Appellant.

Charles P. Just and Robert Martin for Defendant and Respondent.

J. Bruce Fratis, Saveri & Saveri, Richard Saveri, Barbagelata, Broderick, Carmazzi & Arnold and Rinaldo A. Carmazzi for Real Parties in Interest and Respondents.

ELKINGTON, J. — These consolidated appeals primarily concern the interpretation of Business and Professions Code[1] section 24755 as amended in 1961 which relates to minimum retail price schedules for branded distilled spirits. The section is part of the Alcoholic Beverage Control Act (§§ 23000-25762) which herein will be called the Act.

The individual respondents and real parties in interest were holders of off-sale general liquor licenses issued by the Department of Alcoholic Beverage Control (hereinafter called Department). Against each respondent licensee the Department filed an accusation alleging the sale of branded distilled spirits at prices less than the stipulated minimum retail schedules duly filed with the Department. After hearings the Department found the charges to be true. As to some of respondent licensees, license suspension was ordered; as to the others the sanction was license revocation.

Appeals in each case were taken to the Alcoholic Beverage Control Appeals Board (hereinafter called Appeals Board). The Appeals Board reversed the several decisions of the Department. It held in each case that the record did not establish publication as required by section 24755; therefore the evidence did not support the Department's findings that the licensees sold at prices "below the minimum retail price schedule duly filed."

The Department thereupon filed in the superior court applications for mandate (Code Civ. Proc., § 1094.5) seeking reversal of the decisions of the Appeals Board. The superior court, after hearings, entered judgment in each case denying the prayed for relief. Each of the judgments recited: "The

[1]All statutory references unless otherwise noted are to Business and Professions Code.

foregoing judgment is rendered by this Court upon the grounds that, as determined by the Appeals Board in its decision, the record does not contain substantial evidence that the petitioner sustained its burden of proving publication of the price schedule in the manner required by section 24755 of the Business and Professions Code.''

It is from these judgments that the instant appeals were taken.

As pertinent here section 24755 provided:

''(a) No package of distilled spirits which bears the brand, trademark or name of the owner or person in control shall be sold at retail in this State for consumption off the license premises unless a minimum retail price for such package first shall have been filed with the department in accordance with the provisions of this section.

''(b) A price for each of such packages shall be in a minimum retail price schedule setting forth with respect to each package the exact brand, trademark or name, capacity, and type of package, type of distilled spirits, age and proof, where stated on the label, and the minimum selling price at retail. . . . *Any person filing such schedule shall cause such schedule to be published in a manner which will result in each retailer affected by such schedule being advised of the contents of such schedule prior to the effective date thereof.*

''(c) Such schedule shall be filed by (1) the owner of the brand [or any of certain other designated persons]. . . .

''(e) No offsale licensee shall sell any package of distilled spirits at any price less than the effective filed price of such package. . . .''[2] (Italics added.)

Under the authority of section 24757[3] the Department adopted its rule 99 (k) (tit. IV, Cal. Adm. Code) which as pertinent here states: ''(k) Publication. The person filing minimum retail price schedules shall cause prices for all items on every original price schedule and for every change of price or new price on every replacement price schedule *to be published in a trade journal of general circulation in the trading areas affected on or before the effective date thereof. . . .''* (Italics added.)

---

[2]Section 24755 also delineates ''trading area'' for which the minimum retail price schedules may be filed separately and differently. Here we are concerned with the northern California trading area.

Effective November 8, 1967, section 24755 was again amended. Among the changes the requirement of publication was deleted. . . .

[3]''The [D]epartment may adopt such rules as it determines to be necessary for the Administration of sections 24754 to 24756 inclusive. . . .'' (Bus. & Prof. Code, § 24757.)

It seems proper at this point before discussing the respective contentions of the parties to consider certain fundamental principles relating to the enforcement of the Act.

Our Supreme Court in *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 147 [346 P.2d 737], has said, "A state has particularly wide powers with respect to the . . . traffic in alcoholic beverages and may provide for their prohibition or impose such conditions and regulations as it may deem proper."

This court in *State Board of Equalization* v. *Superior Court,* 5 Cal.App.2d 374, 377 [42 P.2d 1076], stated: "Unlike the rule with respect to the right to deal in ordinary commodities . . . there is no inherent right in a citizen to sell intoxicants [citations]; and a license to do so is not a proprietary right within the meaning of the due process clause of the Constitution ([Cal.] Const., art. I, § 13), nor is it a contract [citation]; it is but a permit to do what would otherwise be unlawful. . . ." (See also *Kirchhubel* v. *Munro,* 149 Cal. App.2d 243, 247-248 [308 P.2d 432]; *Schaub's Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 858, 869-870 [315 P.2d 459].)

█ Section 24755 does not require as an element of its violation that a sale below the effective minimum retail price schedule be made *knowingly.* A strict liability is imposed on those exercising the privilege of selling alcoholic beverages. (See *DeMartini* v. *Department of Alcoholic Beverage Control,* 215 Cal.App.2d 787, 815 [30 Cal.Rptr. 668]; *Morell* v. *Department of Alcoholic Beverage Control,* 204 Cal.App.2d 504, 513 [22 Cal.Rptr. 405]; *Munro* v. *Alcoholic Beverage Control Appeals Board,* 154 Cal.App.2d 326, 329 [316 P.2d 401]; *Mercurio* v. *Department of Alcoholic Beverage Control,* 144 Cal.App.2d 626, 630-631 [301 P.2d 474].)

█ The duty to enforce and administer the Act is vested in the Department, and "it has been given a broad range of power and discretion in carrying out this duty, . . ." (*Harris* v. *Alcoholic Beverage Control Appeals Board,* 238 Cal. App.2d 24, 30 [47 Cal.Rptr. 424].)

We shall state the several contentions on these appeals as they are outlined by respondents.

The first and principal contention of respondents[4] may be stated as: *The record discloses that the Department did not*

---

[4]This is the only contention urged by respondent Appeals Board.

*sustain its burden of proving publication of the minimum retail price schedules as required by section 24755.*

The specific contention of respondents takes the following form. In order that section 24755 be violated there must be a sale below the "effective" filed minimum retail price schedule (§ 24755, subd. (e)). For such a schedule to be "effective" there must have been a compliance with subdivision (b) of the section which provides that the "person filing such schedule shall cause [it] to be published in a manner which will result in each retailer affected by such schedule being advised of [its] contents." The schedule was not so published; it follows that there was no "effective" price schedule and accordingly no violation.

Further it is contended: The specification that the schedules be published in a manner which will result in each retailer being advised of their contents is a requirement of some form of actual notice by personal service or by mail.

The records of the administrative hearings show the following: Publication of the minimum retail price schedules was made in the Beverage Industry News, a privately owned monthly publication in business since 1946. It was a trade journal of the liquor industry in general circulation in the area here concerned. Its subscription price was $7.50 per year. Since 1946, copies of the publication had been mailed monthly to a majority of the offsale retail licensees authorized to sell alcoholic beverages in the northern California trading area.

It is clear that publication here was not made in a manner designed to effect actual notice by personal service on, or mailing to, each retailer affected.

In cases dealing with a statutory requirement of publication in a newspaper, California's appellate courts have defined publish as to "disclose, reveal, proclaim, circulate or make public" (*Application of Monrovia Evening Post,* 199 Cal. 263, 266 [248 P. 1017]; *Western States Newspapers, Inc.* v. *Gehringer,* 203 Cal.App.2d 793, 795 [22 Cal.Rptr. 144]) and " 'to proclaim, to advertise.' " (*Arthur* v. *City of Petaluma,* 27 Cal.App. 782, 788 [151 P. 183].)[5]

Black's Law Dictionary (4th ed. 1954) defines "publish" as "To make public; to circulate; to make known to people in general. . . . An advising of the public or making known of something to the public for a purpose." It defines "publica-

[5]We consider "publish" and "publication" in the sense of transmitting information or knowledge. They have, of course, other connotations such as in the law of defamation, negotiable instruments, wills, etc.

tion'' as ''To make public; to make known to people in general; . . . The act of publishing anything; offering it to public notice, or rendering it accessible to public scrutiny.'' Webster's New International Dictionary, Unabridged (2d ed. 1953), defines ''publish'' as ''To make public announcement of; to make known to people in general; . . . To promulgate or proclaim, as a law or an edict. . . . To make public in a newspaper, book, circular or the like.'' (See also 73 C.J.S. 1250-1251.)

''Publish'' has been held not to be synonymous with ''communicate'' or ''to divulge'' or ''to make known.'' (*United States* v. *Baltimore Post Co.,* 2 F.2d 761, 764; 15A C.J.S. 84; 51 C.J.S. 463.) Inseparable from the term is the idea of publicity and circulation. (*United States* v. *Williams,* 3 F. 484, 486; *People* v. *Burns,* 178 App. Div. 845 [166 N.Y.S. 323, 325]; *Cox* v. *First Mortg. Loan Co.,* 173 Okla. 392, 394 [48 P.2d 1060, 1063].) ''The thought running through all the uses of the words . . . is an advising of the public or the making known of something to the public for a purpose. . . .'' (*Estill County* v. *Noland,* 295 Ky. 753 [175 S.W. 2d 341, 346]; *Marx* v. *United States,* 96 F.2d 204, 206; *Associated Press* v. *International News Service,* 245 F. 244, 251 [157 C.C.A. 436, 2 A.L.R. 317].)

We have before us conflicting statutory provisions. If we accept respondents' interpretation we must ignore the phrase, ''shall cause such schedule to be published.'' Conversely, if we give ''published'' its ordinary and accepted meaning we must hold that actual notice to each licensee is not required.

██ If reasonably possible, conflicting provisions of a statute should be reconciled and brought into harmony with each other (*Hough* v. *McCarthy,* 54 Cal.2d 273, 279 [5 Cal.Rptr. 668, 353 P.2d 276]; *County of Placer* v. *Aetna Cas. etc. Co.,* 50 Cal.2d 182, 188-189 [323 P.2d 753].) In doing so, effect and meaning should be given to each word and phrase under consideration. (*Select Base Materials* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672]; *Brown* v. *Cranston,* 214 Cal.App.2d 660, 672 [29 Cal.Rptr. 725].) ██ A construction should be avoided which implies that the Legislature was ignorant of the meaning of language employed, or that it used words in vain, the legal intendment being that each and every clause was inserted for some useful and reasonable purpose. (*Prager* v. *Isreal,* 15 Cal.2d 89, 93 [98 P.2d 729]; *Siler* v. *Industrial Acc. Com.,* 150 Cal.App.2d 157, 161 [309 P.2d 910].) The use of a word with settled legal meaning is some

indication that such meaning was intended. (*Perry* v. *Jordan,* 34 Cal.2d 87, 93 [207 P.2d 47] ; *City of Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305].)

In its interpretation of section 24755 the Department has given to the word "published" its accepted meaning. It has concluded that the intent of the Legislature was that the price schedules be published in a manner *most likely* to give notice to the affected licensees. Rule 99(k) requiring publication "in a trade journal of general circulation" gives rational effect to this interpretation. Such a publication may reasonably be considered as most likely to give the desired notice.

*We are required to accord great respect to this interpretation by the Department. It must be followed unless it appears to be clearly erroneous.* (*Cohon* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 332, 339 [32 Cal. Rptr. 723] ; see also *Adoption of Parker,* 31 Cal.2d 608, 615 [191 P.2d 420] ; *Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal.2d 321, 325-326 [109 P.2d 935] ; *Neely* v. *California State Personnel Board,* 237 Cal.App.2d 487, 491 [47 Cal.Rptr. 64] ; *Rich* v. *State Board of Optometry,* 235 Cal. App.2d 591, 604 [45 Cal.Rptr. 512].) Accordingly, we now direct our inquiry into the reasonableness of the Department's interpretation.

The search for the Legislature's intent is aided by a consideration of section 24875 of the Act relating to minimum price schedules for wine. That section provides for publishing (by the person filing the schedules) in *a trade journal of general circulation* among affected licensees. It then recites: "*Instead of publishing,* [*such person*] *may mail his price schedule or any changes therein to licensees affected.*" (Italics added.) An intent to give the word "publishing" a meaning other than the giving of actual notice as insisted by respondents, is demonstrated. Elsewhere in the Act where actual notice is intended, appropriate words are used, i.e., sections 23328, 23329, 23987, prescribing "written notice," and section 25760 calling for notice "personally or by mail." "[I]t is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (*Stillwell* v. *State Bar,* 29 Cal.2d 119, 123 [173 P.2d 313].)

Throughout the statutes and codes of this state the Legislature has many times provided for publication of notices. So

far as we can determine the term has never been construed to require actual notice. ▪ In construing a provision of any code, reference may properly be made to other codes or statutes for clarification. (*In re Porterfield,* 28 Cal.2d 91, 100 [168 P.2d 706, 167 A.L.R. 675]; *People* v. *Vassar,* 207 Cal. App.2d 318, 323 [24 Cal.Rptr. 481].) "When the scope and meaning of words or phrases in a statute have been repeatedly interpreted by the courts, there is some indication that the use of them in a subsequent statute in a similar setting carries with it a like construction." (*Perry* v. *Jordan, supra,* 34 Cal.2d 87, 93.)

▪ It seems reasonable to conclude that the Legislature intended in its amended section 24755 the common and accepted meaning of the word "published."

However, the Department was required, as are we on these appeals, to give meaning, if possible, to the words "*in a manner which will result in each retailer . . . being advised of [its] contents.*" ▪ If necessary, in order to reach such a result, we can depart from a literal construction of the words employed. (*County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526]; *In re Kernan,* 242 Cal.App.2d 488, 491 [51 Cal.Rptr. 515]; *Brown* v. *Cranston, supra,* 214 Cal.App. 2d 660, 672-673. "[T]he intention of the Legislature must be ascertained, if possible, and, when once ascertained will be given effect, even though it may not be consistent with the strict letter of the statute." (*Struckman* v. *Board of Trustees,* 38 Cal.App.2d 373, 376 [101 P.2d 151].)

▪ We conclude that the Department's determination that the words in question, in the context of the Act and its section 24755, indicated a legislative intent that the price schedules be published in a manner *most likely* to give notice to the affected licensees is reasonable and correct. This interpretation gives effect to each of the words and phrases under consideration. It brings them to a degree of harmony with each other not otherwise possible. And it is consistent with the usual meaning given the word "published" by the Legislature and by the courts.

The Department's interpretation is in accord with the general legislative practice of prescribing publication in such a manner as is best designed to give notice to persons concerned.[6]

---

[6]I.e., Code of Civil Procedure section 1277, in a "newspaper of general circulation . . . printed in the county"; Health and Safety Code section 4785, in a "newspaper having a general circulation in the [sewer] district"; Labor Code section 1181, "by advertisement in at least one

And it imposes no hardship upon the individual licensee who is under an affirmative duty to conduct his business in accordance with law. (See *Morell* v. *Department of Alcoholic Beverage Control, supra,* 204 Cal.App.2d 504, 514; *Munro* v. *Alcoholic Beverage Control Appeals Board,* 181 Cal.App.2d 162, 164 [5 Cal.Rptr. 527]; *Cooper* v. *State Board of Equalization,* 137 Cal.App.2d 672, 678 [290 P.2d 914].) If he cannot conveniently check the price schedules filed with the Department he may have the information delivered to him by subscribing to the Beverage Industry News.

Respondents urge that such a construction of section 24755 makes it "incumbent on a retailer to assume the burden of subscribing to a private trade journal which has no official blessing, sponsorship or information at its disposal."

The Act simply provides that the retailer shall not sell at prices below the effective minimum price schedules under peril of administrative sanction. The publication provisions of section 24755 and rule 99 (k) make these price schedules readily available to him. He may, however, obtain the retail price information from the Department where it is on file or in any manner he chooses. As to the claimed compulsion to subscribe to a private trade journal without official blessing or sponsorship, we see no illegality. All statute-directed publications of notice are made (so far as we can determine) in privately owned newspapers or journals. Indeed, as we have previously pointed out, section 24875 of the Act expressly calls for publication in a trade journal or industry price book of general circulation among wine licensees.

Respondents point out that prior to the 1961 amendment of section 24755, publication as now directed by rule 99 (k) was then also directed by Department rule. Publication was not then expressly directed by the Act as it is now. They contend that by amending section 24755 the Legislature is presumed to have intended a change in the method of giving notice to retailer licensees.

By rules of the Department, and of its predecessor agency, the State Board of Equalization, minimum retail price schedules for branded distilled spirits have been pub-

newspaper published in each of the cities of Los Angeles, Oakland, Sacramento, San Jose, Fresno, Eureka, San Diego, Long Beach, Alameda, Berkeley, Stockton, San Bernardino, and San Francisco"; Business and Professions Code section 23986, "in a newspaper of general circulation in the city in which the premises are situated"; Revenue and Taxation Code section 3391, publication "within the county as they [the board of supervisors] shall determine most likely to afford adequate notice to owners whose property is upon the delinquent lists."

lished (except for a few years during and after World War II) since 1939[7] in a trade journal of general circulation. If the Legislature intended by its 1961 amendment of section 24755 that such publication be discontinued in favor of actual notice it seems likely that it would not have used the word "published." Instead it would have called for "written notice" or notice "personally or by mail" as it has elsewhere in the Act. (See for instance, §§ 23328, 23329, 23987, 25760.) The circumstances seem more likely to indicate an intent to confirm the practice of publication by placing express direction therefor in the Act.

While an intention to change the law is usually inferred from a material change in the language of the statute (*Loew's Inc.* v. *Byram,* 11 Cal.2d 746, 750 [82 P.2d 1]; *People* v. *Weitzel,* 201 Cal. 116, 118 [255 P. 792, 52 A.L.R. 811]) "the circumstances may indicate merely a legislative intent to clarify the law." (*W. R. Grace & Co.* v. *California Employment Com.,* 24 Cal.2d 720, 729 [151 P.2d 215]; see also *San Joaquin Ginning Co.* v. *McColgan,* 20 Cal.2d 254, 264 [125 P.2d 36]; *Martin* v. *California Mut. Bldg. & Loan Assn.,* 18 Cal.2d 478, 484 [116 P.2d 71]; *Union League Club* v. *Johnson,* 18 Cal.2d 275, 279 [115 P.2d 425]; *County of Alameda* v. *Clifford,* 187 Cal.App.2d 714, 723 [10 Cal.Rptr. 144].)

We conclude that the Department's interpretation of the publication provisions of section 24755 is reasonable and certainly not "clearly erroneous." It should be followed by us. (See *Cohon* v. *Department of Alcoholic Beverage Control, supra,* 218 Cal.App.2d 332, 339.) Accordingly, the record before us discloses that the Department did sustain its burden of proving publication of minimum retail price schedules as required by section 24755.

Respondent licensees' second contention is stated as "*Section 24755 of the Business and Professions Code and Rule 99 are unconstitutional.*"

The argument here is that section 24755 as amended, "is now nothing more than a naked 'price fixing' statute by which the Legislature has unlawfully delegated its power to producers and brand owners (who no longer are required to be in fair and open competition) and which permits them unilaterally to fix the price at which liquor must be retailed without any protective 'standards,' 'price guidelines,' 'ordinary play of competition' or 'bargaining processes' whatso-

---

[7]Rule 42 (1939, 1940) and rule 22 (1941-1944), State Board of Equalization, rule 99, title 4, California Administrative Code (1947).

ever.'' Such a grant of power, it is argued, is an unlawful delegation of legislative authority and is so arbitrary as to amount to a denial of due process of law as guaranteed by the federal and state Constitutions.

The appellate courts of this state apparently have never considered the constitutionality of section 24755 as amended in 1961. However, the general argument now made by respondent licensees has frequently been directed at distilled spirits minimum price statutes and regulations both in this state and elsewhere. While other states are not in agreement, the question in California appears to be resolved by the cases of *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control,* 65 Cal.2d 349 [55 Cal.Rptr. 23, 420 P.2d 735], and *Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141. These cases concerned the mandatory fair trade minimum price fixing provisions of the Act as they existed prior to the 1961 amendment of section 24755.

The earlier law permitted (and still permits) fair trade contracts relating to the sale of any branded distilled spirits, ''which is in [any] fair and open competition with alcoholic beverages of the same general class produced by others. . . .'' (Section 24750.) Section 24755 (before its 1961 amendment) provided that all ''distilled spirits sold at retail shall be . . . sold pursuant to [such a fair trade] contract.'' As amended in 1961, section 24755 provides that no branded distilled spirits shall be sold at retail at a price below the filed effective minimum price schedule, without regard to whether there is a related fair trade contract.

It will be seen that since 1961 under section 24755 there is no longer a requirement that at least one fair trade contract be negotiated with a retailer, nor is there an express requirement that brands be in fair and open competition with other brands. These omissions, respondents urge, present new questions of constitutionality not decided by *Wilke & Holzheiser, Inc., supra,* and *Allied Properties, supra,* which should now be considered by this court.

*Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, 365-369, considering the pre-1961 mandatory minimum price fixing provisions of the Act, rejected the contention that they *unlawfully delegated* legislative power by enabling a producer or wholesaler to fix retail prices. It held that (pp. 365-366): ''To argue that the Alcoholic Beverage Control Act unlawfully delegates legislative power because it is a 'price-fixing act' is to overlook the

·crucial distinction between the fixing of a price for *all* products in a given market and the setting by the producer of the retail price at which *his own* product is to be sold.'' The court found no tendency in the Act to allow one to regulate the business of his competitors or to exclude potential competitors from the liquor industry. It concluded (p. 367) : ''To the extent that the retail price maintenance provisions enable a producer to control the bargaining process between those who sell and those who buy his own product, the Legislature could reasonably assume that competition among producers, coupled with the bargaining power of those low overhead retailers who desire lower retail prices, would provide a safeguard against excessive prices.'' The holding of *Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141, generally was to the same effect.

 Respondents contend that the earlier statutory requisite of a negotiated fair trade contract was a necessary guideline and safeguard now wholly missing from the Act. We cannot agree that the former requirement that a. producer establish a minimum price for his product by securing a fair trade contract with at least *one* retailer before it became binding on all retailers was in substance or practical effect any different from the present section 24755 requirement that he unilaterally fix such a price. In each case the producer effectively sets the price for which his own product is to be sold. The competition between producers and their respective brands is not affected. This, coupled with the bargaining power of low overhead retailers who desire lower retail prices, could, as said by the *Wilke & Holzheiser* court, reasonably be assessed by the Legislature to be a safeguard against excessive prices.

 Nor do we deem the absence from section 24755 of the specific requisite that the brands be in ''fair and open competition with alcoholic beverages of the same general class produced by others'' to create a constitutional infirmity. Such fair and open competition is a positive requirement of the Cartwright Antitrust Law (Bus. & Prof. Code, §§ 16700-16758). Minimum retail price schedules resulting from any combination for the purpose of stifling fair and open competition would be an offense against that law. (*DeMartini* v. *Department of Alcoholic Beverage Control, supra,* 215 Cal. App.2d 787, 808-809.)

Respondents complain that the Department is no longer required under section 24755 to produce affirmative eviden-

tiary proof, or make express findings, that the brands involved are in such fair and open competition. This contention assumes that there was such a requirement prior to 1961. *DeMartini* v. *Department of Alcoholic Beverage Control, supra,* 215 Cal.App.2d 787, 808-809, considering the pre-1961 Act, held that certain statutory presumptions[8] constituted evidence, in similar proceedings before the Department, that the filed price schedules were in fair and open competition. (See also *Dave's Market, Inc.* v. *Department of Alcoholic Beverage Control,* 222 Cal.App.2d 671, 677-678 [35 Cal.Rptr. 348]; *United Liquors, Inc.* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 450, 453-454 [32 Cal.Rptr. 603].) *DeMartini* v. *Department of Alcoholic Beverage Control, supra* (pp. 813-814), also held that express findings that the products were in fair and open competition were not required.

 Applying the principles announced in *Wilke & Holzheiser, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 65 Cal.2d 349, and *Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141, we hold section 24755 and rule 99 not to be violative of the due process clauses of the federal and state Constitutions.

Respondents Carella and Carella (1 Civ. 22994) and Carella and Maniscalco (1 Civ. 22995) further contend: *"The Department erred by considering four unproven prior accusations in determining the penalty imposed herein.*

Section 23095 provides, in part, as follows:

"Whenever a decision of the department suspending a license for 30 days or less becomes final, whether by failure of the licensee to appeal the decision or by exhaustion of all appeals and judicial review, the licensee may, before the operative date of such suspension, petition the department for permission to make an offer in compromise, . . ."

 Four previous accusations concerning the named licensee respondents were found to be true by the Department. In each case it was decided that the license be suspended for 30 days or less. As to each decision, administrative or judicial review was pending when the parties stipulated to a penalty compromise (§ 23905) under which respondents would make a payment of $2,000. The compromise stipulation further provided that one case would be "permitted to become final"

---

[8]Code of Civil Procedure section 1963, subdivision 15, "that official duty has been regularly performed"; *idem,* subdivision 19, that "private transactions have been fair and regular"; *idem,* subdivision 33, that "the law has been obeyed." (See Evid. Code, § 12.) They were repealed effective January 1, 1967, and reenacted in substance elsewhere.

while the suspensions in the other "proceedings mentioned were merged." The $2,000 payment was made and the respective reviews or appeals were dismissed.

In the instant cases the Department found each of the four prior decisions was a final determination and considered all of them in fixing the penalties. Respondents contend that such findings were not supported by the evidence and that such consideration was error.

 In administrative matters such as those before us, consideration of prior disciplinary proceedings is entirely proper, and the prior record of a licensee is relevant and material evidence of his knowledge of and compliance with the pertinent laws. (*Dave's Market, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 222 Cal.App.2d 671, 679-680.)

We conclude that the evidence before the Department gave sufficient support to the questioned findings, and that the Department did not err in considering the four prior proceedings.

 Certain respondent licensees have in their briefs urged several additional points which were not raised before the Department, the Appeals Board or the superior court. With the hereinafter discussed exception these points relate to questions of fact or mixed questions of fact and law which could have been presented to and considered by the Department. Under well-established rules such matters may not be urged for the first time on appeal. (See *Ward* v. *Taggart*, 51 Cal.2d 736, 742 [336 P.2d 534]; *Damiani* v. *Albert*, 48 Cal.2d 15, 18 [306 P.2d 780]; *Algeri* v. *Tonini*, 159 Cal.App.2d 828, 832 [324 P.2d 724].)

We think it proper, however, to consider one matter which is now urged for the first time by the following contention: *The penalties of revocation and suspension ordered by the Department should be vacated and a monetary penalty as provided by section 24755.1 should be applied retroactively.*

In 1965, and following the Department's hearings and decisions in the matters before us, the Legislature enacted section 24755.1. This section provides among other things that the license of a Department licensee shall not be suspended or revoked for a violation of section 24755. It establishes monetary penalties as the sanction for such violations.

 Respondent licensees ask us to give retroactive application of section 24755.1 to their cases. We are precluded from doing so by *Wilke & Holzheiser, Inc.* v. *Department of Alco-*

*holic Beverage Control, supra,* 65 Cal.2d 349, where a similar request was made. The court in *Wilke & Holzheiser, Inc.* (p. 373) held "Section 24755.1 clearly does not apply to a license suspension or revocation preceding its effective date." However, in view of the current legislative intent concerning license revocation and suspension demonstrated by section 24755.1 the Department may elect to review respondent licensee's penalty assessments before they are placed in effect, as permitted by section 24211, added in 1963.

Each of the judgments appealed from is reversed. The superior court in each case will grant a writ of mandate commanding respondent Appeals Board to set aside its decision reversing the decision of the Department and to affirm such decision of the Department.

Sims, Acting P. J., and Christian, J.,* concurred.

Petitions for rehearing were denied on December 15, 1967, and the following opinion was then rendered:

THE COURT.—We have considered the licensee-respondents' respective petitions for rehearing.

▇▇▇ Respondents Carella (1 Civ. 22994) and Carella and Maniscalco (1 Civ. 22995) vigorously urge that this court failed to consider an important issue properly raised in their briefs. This issue is stated as "There was no proof of publication of the pertinent minimum price schedules *prior to their effective date."* The contention raises a theory relating to the *time* of publication as distinguished from the *fact* or *manner* of publication. We have again reviewed the record. The only pertinent statement of defense raised below alleged: "XI. That said minimum retail price schedules and the filings thereof were invalid and ineffective to establish the minimum resale prices of the distilled spirits subject of the Accusation and did not comply with § 24755 of the Business and Professions Code."

The contention now being discussed reasonably might have been considered as within the issues at the time of the Department hearing. However, the theory was not pointed out, argued or considered at the hearings before the Department, the Appeals Board or the superior court, and the Department was afforded no opportunity to meet it. It is urged for the first time on this appeal. "A party is not permitted to change

---

*Assigned by the Chairman of the Judicial Council.

his position and adopt a new and different theory on appeal.''
(*Ernst* v. *Searle,* 218 Cal. 233, 240-241 [22 P.2d 715] ; 3 Witkin, Cal. Procedure (1954) p. 2264, § 96.) This rule is applicable to appeals such as those before us. (See *Nelson* v. *Department of Alcoholic Beverage Control,* 166 Cal.App.2d 783, 788 [333 P.2d 771].) Licensee-respondents Lancellotti (1 Civ. 23401) who presented the same point on their appeal concede that it was not urged below by them.

Rehearing denied.

The petitions of the defendant and respondent and the real parties in interest and respondents for a hearing by the Supreme Court were denied January 17, 1968.